# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

EDWARD B. SPENCER,

    Plaintiff,

  v.

PULIDO-ESPARZA, et al.,

    Defendants.

**1:20-cv-01176-JLT-GSA-PC**

**ORDER WITHDRAWING FINDINGS AND RECOMMENDATIONS ISSUED ON APRIL 7, 2023**

**(ECF No. 15.)**

   **AND**

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S MOTION FOR LEAVE TO AMEND BE DENIED, THAT THIS CASE PROCEED WITH THE FIRST AMENDED COMPLAINT AGAINST DEFENDANT CDCR FOR VIOLATION OF THE ADA, AND THAT ALL OTHER CLAIMS AND DEFENDANTS BE DISMISSED, WITHOUT LEAVE TO AMEND**

**(ECF No. 17.)**

**OBJECTIONS DUE <u>ON OR BEFORE MAY 26, 2023</u>**

## I.    BACKGROUND

Edward B. Spencer ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 (1994).  On August 20, 2020, Plaintiff filed the Complaint commencing this action. (ECF No. 1.)  On November 5, 2021, the Court screened the

Complaint and dismissed it for failure to state a claim, with leave to amend.  (ECF No. 10.)  On December 21, 2021, Plaintiff filed the First Amended Complaint.  (ECF No. 13.)

On April 7, 2023, the Court issued findings and recommendations, recommending that this case proceed with the First Amended Complaint with only Plaintiff's ADA claim against Defendant CDCR, and that all other claims be dismissed without leave to amend.  (ECF No. 15.)

On April 19, 2023, Plaintiff filed objections to the findings and recommendations and requested leave to file a Second Amended Complaint adding facts in support of his ADA and retaliation claims.  (ECF No. 17.)

The  Court shall screen the First Amended Complaint (28 U.S.C. § 1915) and in addition address Plaintiff's motion for leave to amend.

## II.    SCREENING REQUIREMENT – FIRST AMENDED COMPLAINT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service,

572 F.3d 962, 969 (9th Cir. 2009).   While factual allegations are accepted as true, legal conclusions are not.   Id.   The mere possibility of misconduct falls short of meeting this plausibility standard.   Id.

## III.   SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR).   The events at issue in the First Amended Complaint allegedly occurred at SATF.   Plaintiff names as defendants Correctional Officer L. Pulido-Esparza,   Lieutenant C. Smith (Hearing Officer), Stuart Sherman (Warden), and CDCR (collectively, "Defendants").   Plaintiff sues Defendants Pulido-Esparza, Smith, and Sherman in their individual capacities and Defendant CDCR in its official and individual capacities.

A summary of Plaintiff's allegations follows:

The gravamen of Plaintiff's Complaint is that Defendants forced him to stand up during inmate counts until counted by the officer taking count, while Plaintiff was having severe cramps and in excruciating pain, rather than allowing him to sit on his assigned bed or wheelchair during count. Plaintiff is a qualified individual with a disability and is designated an intermittent wheelchair user who needs a wheelchair outside of his cell but does not require a wheelchair accessible cell (DPO).   A DPW is a full-time wheelchair user who requires a wheelchair accessible cell.   Plaintiff alleges that Defendants Sherman and CDCR discriminated against Plaintiff for being a DPO and not a DPW.

## IV.   PLAINTIFF'S CLAIMS – FIRST AMENDED COMPLAINT

### A.   AMERICANS WITH DISABILITIES ACT (ADA) CLAIM

Title II of the Americans with Disabilities Act prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability.  42 U.S.C. § 12132 (1994); Weinrich v. L.A. County Metro Transp. Auth., 114 F.3d 976, 978 (9th Cir.), cert. denied, 522 U.S. 971 (1997). The Supreme Court has held that Title II of the ADA applies to state prisons.  Pennsylvania Dept. of Corr. v. Yeskey, 524 U.S. 206, 210 (1998); see also Lee v. City of L.A., 250 F.3d 668, 691 (9th Cir. 2001).   Furthermore, "there is no question that

defendant CDCR, as a 'department [or] agency . . . of a State' is a 'public entity' for purposes of the ADA, 42 U.S.C. § 12131(1)." <u>Jones v. Scotland</u>, No. 2:12-CV-00633 TLN, 2015 WL 461633, at *4 (E.D. Cal. Feb. 3, 2015), <u>report and recommendation adopted,</u> No. 2:12-CV-0633 TLN DAD, 2015 WL 1347412 (E.D. Cal. Mar. 23, 2015). "Generally, public entities must 'make reasonable modification in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.'" <u>Pierce v. County of Orange</u>, 526 F.3d 1190, 1215 (9th Cir. 2008) (quoting 28 C.F.R. § 35.130(b)(7)).

To state a claim under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability; (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) the plaintiff was either excluded from participation in or denied the benefits by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability. <u>Simmons v. Navajo County, Ariz</u>, 609 F.3d 1011, 1021 (9th Cir. 2010); <u>McGary v. City of Portland</u>, 386 F.3d 1259, 1265 (9th Cir. 2004) (policy burdened plaintiff in a manner different from and greater than it burdened non-disabled residents, solely as a result of his disabling condition); <u>Weinrich</u>, 114 F.3d at 978.

The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. <u>United States v. Georgia</u>, 546 U.S. 151, 153 (2006). State correctional facilities are "public entities" within the meaning of the ADA. <u>See</u> 42 U.S.C. § 12131(1)(A) & (B); <u>Pennsylvania Dept. of Corrections</u>, 524 U.S. at 210; <u>Armstrong v. Wilson</u>, 124 F.3d 1019, 1025 (9th Cir. 1997). However, a state official sued in her official capacity is, in effect, a suit against the government entity and is an appropriate defendant in an ADA action. <u>See Applegate v. CCI</u>, No. 1:16–cv–1343 MJS (PC), 2016 WL 7491635, at *5 (E.D. Cal. Dec. 29, 2016) (citing <u>Miranda B. v. Kitzhaber</u>, 328 F.3d 1181, 1187–88 (9th Cir. 2003); <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)).

///

4

Ordinarily, a plaintiff is not entitled to monetary damages against defendants in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment does not bar ADA or RA suits against state officials in their official capacities for injunctive relief or damages. See Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792–93 (9th Cir. 2004).

Furthermore, "[t]o recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). The standard for intentional discrimination is deliberate indifference, "which requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." Id. at 1139. The ADA plaintiff must both "identify 'specific reasonable' and 'necessary' accommodations that the state failed to provide" and show that the defendant's failure to act was "a result of conduct that is more than negligent, and involves an element of deliberateness." Id. at 1140.  When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.  Id. at 1139.

Although "[t]he ADA prohibits discrimination because of disability," it does not provide a remedy for "inadequate treatment for disability." Simmons, 609 F.3d at 1022 (citing Bryant v. Madigan, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison for simply failing to attend to the medical needs of its disabled prisoners. . . . The ADA does not create a remedy for medical malpractice.")).

The ADA, as amended in 2008, defines a disability with respect to an individual as "a physical or mental impairment that substantially limits one or more major life activities of such an individual."  Id. (quoting 42 U.S.C. § 12102(1)(A)).

///

///

### Discussion

Plaintiff alleges that he experiences severe cramps due to elevated creatine kinase[1] and is classified as a DPO (intermittent wheelchair user) at the prison.  (First Amended Complaint (FAC), ECF No. 13 at ¶¶ 6, 18.)   This allegation satisfies the first requirement to state an ADA claim (the plaintiff is an individual with a disability).

Plaintiff is able to stand up as required during the facility's Institutional Count, except when he is experiencing severe cramps.  (FAC at ¶ 15.)  This allegation satisfies the second requirement to state an ADA claim (the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities).

Plaintiff alleges that he was denied the option of sitting down during the Institutional Count, denying him the ability to participate in the count.  Plaintiff alleges that on December 29, 2019, he filed an 1824 (form) requesting to be allowed to sit on his bed or in his wheelchair for count when he has severe cramps and pain.  (FAC at ¶ 20.)  Plaintiff alleges that although he has several medical equipment accommodations available to him – cane, compression stocking, diabetic supplies/Monitors, eyeglass frames, incontinence supplies, mobility impaired disability vest, non-invasive airways devices, therapeutic shoes, wheelchair, wrist support brace, wheelchair cushion, and wheelchair gloves -- none of these accommodations would have assisted him in standing on the dates that he fell, because the cramps are so painful that he has to be seated.  (FAC at ¶¶ 15, 16.)  The next week, the Reasonable Accommodation Panel denied Plaintiff's request to be allowed to sit.  (FAC at ¶ 20.)  These allegations satisfy the third requirement (the plaintiff was either excluded from participation in or denied the benefits by the public entity).

Plaintiff was denied the ability to participate because his disability caused him to be unable to stand during the Institutional Count. Plaintiff reports that he had fallen to the ground on numerous occasions when having a severe cramp episode. (FAC at ¶ 21.)  Also, CC-II N. Peterson [not a defendant] had interviewed Plaintiff and clarified that his severe muscle cramps

---

[1] Creatine kinase is an enzyme.  See https://www.mayocliniclabs.com/test-catalog/Clinical+and+Interpretive/8336 (last visited October 29, 2021)

limit his ability to stand during count.   (FAC at ¶ 23.)   However, Plaintiff was denied accommodations that would allow him to sit down during institutional count.  These allegations satisfy the fourth and last requirement to state an ADA claim (such exclusion, denial of benefits or discrimination was by reason of the plaintiff's disability).

The court finds therefore that Plaintiff has sufficiently alleged a violation of the ADA because CDCR is the public entity responsible for the alleged discrimination by its policy Operational Procedure 403, which states that only DPW (full time wheelchair user) inmates are authorized to sit on their beds during the Institutional Count time -- and therefore Plaintiff, as a DPO inmate, by not being authorized to sit in his cell during the Institutional Count -- is an appropriate Defendant for an ADA claim.[2] Therefore, based on the foregoing, the Court finds that Plaintiff states a claim for violation of the ADA against Defendant CDCR. However, since the remaining defendants are being sued only in their individual capacities, they are not proper defendants for an alleged ADA violation.

**B.     CIVIL RIGHTS ACT -- 42 U.S.C. § 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v.

---

[2] Defendant Sherman (Warden) and Defendant L. Pulido-Esparza are also proper defendants for an ADA claim if sued as state officials in their official capacities. However, Plaintiff sues Defendants Sherman and Pulido-Esparza only in their individual capacities.

<u>Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  <u>Id.</u>

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see</u> <u>also</u> <u>Marsh v. Cnty. of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  <u>Id.</u> (quoting <u>Johnson</u>, 588 F.2d at 743).   This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

### B1.   Eleventh Amendment – Defendant CDCR

The Eleventh Amendment to the U.S. Constitution bars from the federal courts suits against a state by its own citizens, citizens of another state, or citizens or subjects of any foreign state, absent consent to the filing of such suit.  <u>Atascadero State Hosp. v. Scanlon</u>, 473 U.S. 234, 237-38 (1985).  Eleventh Amendment immunity also extends to suits against an arm of the state, such as the CDCR and prisons within the CDCR.  <u>See</u> <u>Brown v. Cal. Dep't of Corrs.</u>, 554 F.3d 747, 752 (9th Cir. 2009) (California Department of Corrections and California Board of Prison Terms entitled to 11th Amendment immunity).

Eleventh Amendment immunity also extends to state officials sued in their official capacities. <u>See</u> <u>Kentucky</u>, 473 U.S. at 169-70.  Claims for injunctive relief against the individual

defendants sued in their official capacity may be pursued, however.  <u>See</u> <u>Ex parte Young</u>, 209 U.S. 123 (1908) (suit against a state official seeking prospective injunctive relief from unconstitutional state action is not considered an action against the state).  Plaintiff seeks damages and injunctive relief in his Complaint.  He sues defendant CDCR in its official and individual capacities, and he sues Defendants Pulido-Esparza, Smith, and Sherman in only their individual capacities.

Thus, all § 1983 claims against defendant CDCR are barred under the Eleventh Amendment and therefore must be dismissed.  (**As discussed above, however, CDCR is a proper defendant for Plaintiff's ADA claims, because the Eleventh Amendment does not bar ADA or RA suits against state officials in their official capacities for injunctive relief or damages**.)

Plaintiff's § 1983 claims for injunctive relief may only go forward against individual defendants sued in their official capacities.  However, Plaintiff names no individuals who are being sued in their official capacities.  Therefore, Plaintiff's § 1983 claims against CDCR must be dismissed, with prejudice.

### B2.    Retaliation

Plaintiff alleges that Pulido-Esparza acted against him because he filed grievances against Pulido-Esparza's co-workers and supervisors.  "Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so."  <u>Watison v. Carter</u>, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  <u>Rhodes v. Robinson</u>, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity.  <u>Grenning v. Klemme</u>, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).

Plaintiff alleges that on December 28, 2019, Defendant Pulido-Esparza issued a Rules Violation Report (RVR) no. 006948533 against Plaintiff for his failure to properly present for count as described in Institutional Procedures.  (FAC at ¶¶ 14, 62, 66.)  Plaintiff had told Defendant Pulido-Esparza that he was having severe pain cramps and could not stand at that moment in time, and it was obvious that Plaintiff was at risk of falling.  (FAC at ¶ 63.)  Defendant Pulido-Esparza just asked Plaintiff if he was "DPW," then walked off, and issued a false RVR against Plaintiff.  (FAC at ¶¶ 63, 64, 67.)  These allegations are enough to satisfy the first requirement to state a retaliation claim (A state actor took some adverse action against an inmate).

Plaintiff also alleges that he had filed grievances and civil lawsuits against prison staff members.  (FAC at ¶¶ 29, 62.)  "Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison, 668 F.3d at 1114) (citing Brodheim, 584 F.3d at 1269). This allegation therefore satisfies the third requirement to state a retaliation claim (Plaintiff participated in protected conduct).

Plaintiff also satisfies the fourth requirement to state a retaliation claim (the adverse action chilled Plaintiff's exercise of his First Amendment rights), when he (Plaintiff) alleged that he was reluctant to file other grievances challenging other incidents involving Defendants based on Defendants' conduct. (FAC at ¶ 32.)

Plaintiff also alleges that filing the RVR against him did not reasonably advance a legitimate correctional goal, which is the fifth requirement for stating a retaliation claim.  (FAC at ¶ 69.)  However, Plaintiff uses conclusory language unsupported by facts.  Plaintiff fails to allege facts showing why issuing a RVR against him for violating prison rules did not advance the correctional goal of discouraging further noncompliance with rules and regulations. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (finding "preserving institutional order and discipline" through disciplinary action that was supported by "some evidence" advances legitimate penological goals).

More importantly, however, Plaintiff fails to satisfy the second requirement to state a retaliation claim, that Pulido-Esparza acted against him by issuing a false RVR *because* Plaintiff filed grievances and lawsuits.  Plaintiff has not provided a nexus between the retaliatory act

(issuance of RVR) and Plaintiff's filing of grievances and lawsuits.  Plaintiff alleges that Defendant Pulido-Esparza knew that Plaintiff was known as a complainer and had filed many grievances, which created a reasonable inference that Defendant Pulido-Esparza filed the RVR charges against Plaintiff with a retaliatory motive. (FAC at ¶ 68.) However, Plaintiff again uses conclusory language without supplying sufficient supportive facts to allege that he was retaliated against because he filed grievances and civil lawsuits. Even if Pulido-Esparza knew that Plaintiff filed grievances, Plaintiff has not factually demonstrated that Pulido-Esparza's knowledge of Plaintiff's grievances was the reason for filing an alleged falsified RVR against Plaintiff for failure to appear appropriately at the Institution Count. Plaintiff's failure to provide the nexus, as required, causes failure of his retaliation claim. Therefore, Plaintiff fails to state a retaliation claim against Defendant Pulido-Esparza, and the claim must be dismissed.

### B3.   Eighth Amendment Claim

The Eighth Amendment protects Plaintiff's rights against inhumane methods of punishment and inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain.  Id. (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).  Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment.  Id. (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737, 122 S.Ct. 2508 (2002); Rhodes, 452 U.S. at 346.  Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To maintain an Eighth Amendment claim, a prisoner must show that prison officials were deliberately indifferent to a substantial risk of harm to his health or safety.  E.g., Farmer, 511

U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ."  Farmer, 511 U.S. at 834.  "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation.  Johnson, 217 F.3d at 731.  Rather, extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.  Farmer, 511 U.S. at 834; Hudson v. McMillian, 503 U.S. 1, 9, 112 S.Ct. 995 (1992).  The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim.  Johnson, 217 F.3d at 731.  Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ."  Farmer, 511 U.S. at 837.  Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it.  Id. at 837-45.  Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton.  Farmer, 511 U.S. at 835; Frost, 152 F.3d at 1128

Here, Plaintiff alleges that Defendant Sherman violated Plaintiff's Eighth Amendment rights by ignoring the Armstrong Remedial Plan, and that Defendants violated the Eighth Amendment when they ignored Plaintiff's safety concerns and failed to follow standard procedures (Armstrong Remedial Plan) for addressing potential safety threat/concerns, which include providing an accommodation for sitting during institutional court at 1700 hours.  (FAC at ¶¶ 41, 42, 46, 47, 52, 53.)

This claim is deficient because Plaintiff uses conclusory allegations when describing how Defendants violated his rights under the Eighth Amendment.  Plaintiff fails to allege *facts* demonstrating that any of the individual Defendants, *by name*, personally and consciously knew

that Plaintiff was at substantial risk of serious physical injury, and yet ignored the known risk, personally acting against Plaintiff or failing to act, and causing him to suffer injury.  For instance, Plaintiff states that he reported that he had fallen to the ground when having a severe cramp episode on numerous occasions (FAC at ¶ 21); that N. Peterson interviewed Plaintiff and clarified that his severe muscle cramps limit his ability to stand during count (FAC at ¶ 23); that Plaintiff is troubled that the RAP (Reasonable Accommodation Panel), Defendant Sherman, and headquarters staff all failed to meaningfully consider Plaintiff's disability-related request (FAC at ¶ 24); and finally, the RAP denied Plaintiff's request for accommodation (FAC at ¶ 20). These facts demonstrate at most a difference of opinion, but do not demonstrate that defendants acted with deliberate indifference. As to the first prong (objective) of an Eighth Amendment violation, a Plaintiff must demonstrate that the deprivation is sufficiently serious, and as to the second prong (subjective) the Plaintiff must demonstrate that the deprivation occurred with deliberate indifference to the inmate's health or safety. Foster, 554 F.3d at 812-14. The indifference must go to something substantial, mere indifference or negligence is insufficient. Moreover, a difference of opinion concerning what medical care is appropriate does not amount to deliberate indifference. Shehee v. Nguyen, Case No. 1:14-cv-00154-LJO-MJS(PC) (E.D. Cal. 2018), 2018 U.S. Dist. **LEXIS** 20368 at * 17.) Here, Plaintiff was given DPO status and at his RAP hearing he was denied his request for a further accommodation. Plaintiff merely asserts that the RAP, Sherman and headquarters staff all failed to meaningfully consider Plaintiff's disability-related request (1AC, #24). Hence, not only has Plaintiff failed to supply facts demonstrating that the defendants acted with deliberate indifference to his medical condition, just as importantly he has failed to show more than a mere difference of opinion as to his requested accommodation.

Without more facts showing what each individual defendant specifically knew about the Plaintiff's cramps due to elevated creatine kinase levels (objective prong), and how this could result in a serious threat of injury to Plaintiff if he were to fall, Plaintiff has not established an Eighth Amendment violation. Moreover, Plaintiff has not demonstrated that any of the named defendants acted with intentional deliberate indifference (subjective prong), and thus the court

///

cannot find that Plaintiff's rights under the Eighth Amendment were violated by any of the named Defendants.

### B4.   **Prison Appeals Process**

Plaintiff alleges that his prison appeal was denied by Defendant Sherman, violating his rights to due process.  (FAC at ¶ 40.)  The Due Process Clause protects prisoners from being deprived of liberty without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Id.

"[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action.[3]  Buckley, 997 F.2d at 495.  The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution

---

[3] Although, as discussed above at ¶ 1, a prisoner/plaintiff may state a retaliation claim if he is threatened with adverse action for filing a 602 appeal.

himself is not correct.  "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."  Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. Feb. 21, 2017).

Thus, Plaintiff's allegations that his prison appeal was not properly decided by Defendant Sherman fail to state a cognizable due process claim.

### B5.   Equal Protection  - Fourteenth Amendment Violation

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee, 250 F.3d at 686), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

"'[T]he disabled do not constitute a suspect class' for equal protection purposes."  Lee, 250 F.3d at 687 (quoting Does 1-5 v. Chandler, 83 F.3d 1150, 1155 (9th Cir. 1996)).  In addition, "neither prisoners nor 'persons convicted of crimes' constitute a suspect class for equal protection purposes." United States v. Whitlock, 639 F.3d 935, 941 (9th Cir. 2011); Glauner v. Miller, 184 F.3d 1053, 1054 (9th Cir. 1999) ("[P]risoners are not a suspect class...."); McQueary v. Blodgett,

924 F.2d 829, 834-35 (9th Cir. 1991) ("Inmates are not entitled to identical treatment as other inmates merely because they are all inmates.").

Here, Plaintiff alleges that Defendants Sherman and Pulido-Esparza discriminated against him for being a DPO and not a DPW.[4] (FAC at ¶¶ 33, 34.) They refused to allow Plaintiff to sit, but allowed DPW to sit during count. (FAC at ¶ 33.) Plaintiff alleges that he was similarly situated to DPW inmates but was treated unequally, without any rational basis. (FAC at ¶ 34.) Plaintiff alleges that Defendant Sherman impermissibly discriminated against Plaintiff because of his DPO handicap.

Plaintiff alleges that as an inmate identified as DPO, he is similarly situated to inmates identified as DPW, and DPW inmates are allowed to sit during the prison's count, whereas DPO inmates are not. (FAC at ¶¶ 34, 45.) Both DPO and DPW inmates are disabled and use wheelchairs to ambulate. Thus, Plaintiff alleges that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose. However, to succeed on an equal protection claim, a prisoner must show that officials intentionally acted in a discriminatory manner. <u>More v. Farrier</u>, 984 F.2d 269, 271-72 (8th Cir. 1993) (holding federal courts, absent evidence of invidious discrimination, should defer to judgment of prison officials); <u>Village of Arlington Heights</u>, 429 U.S. at 264-66 (Claims brought under any theory must satisfy the intent requirement, that is, the plaintiff must show that some discriminatory purpose underlies the policy.). Here, there are no facts in the complaint that show discriminatory intent on the part of defendants. Plaintiff alleges that when he was denied his request for an accommodation, it was RAP, Defendant Sherman, and "headquarters staff" who failed him by not meaningfully considering his request (FAC at ¶ 24), and that Defendant Sherman did not substantively address Plaintiff's report that he has fallen absent the requested accommodations (FAC at ¶ 41). Plaintiff fails to allege facts showing that any of the Defendants intentionally discriminated against Plaintiff because of his DPO status.

---

[4] According to Plaintiff's Complaint, a DPO is qualified individual with a disability who needs a wheelchair outside of his cell but does not require a wheelchair accessible cell, whereas a DPW is a full-time wheelchair user who requires a wheelchair accessible cell.

Therefore, the Court finds that Plaintiff fails to state a claim for violation of Plaintiff's rights to equal protection.

### B6.   <u>Due Process – RVR Hearing – False Report and Forfeiture of Credits</u>

The Due Process Clause protects against the deprivation of liberty without due process of law.  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221, 125 S.Ct. 2384, 2393 (2005).  In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought.  <u>Id.</u>  Liberty interests may arise from the Due Process Clause itself or from state law.  <u>Id.</u>

Under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation.  <u>Sandin</u>, 515 U.S. at 481-84.  Liberty interests created by state law are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Id.</u> at 484; <u>Myron v. Terhune</u>, 476 F.3d 716, 718 (9th Cir. 2007).  Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." <u>Wolff</u>, 418 U.S. at 556.

With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex.  <u>Id.</u>  at 563–71.  In addition, "[s]ome evidence" must support the decision of the hearing officer. <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985). The standard is not particularly stringent and the relevant inquiry is whether "there is any evidence in the record that could support the conclusion reached . . . ."  <u>Id.</u> at 455–56 (emphasis added).

Plaintiff makes a number of allegations regarding his RVR. Most central to these are: **1-**his rights to due process were violated when Defendant Pulido-Esparza issued him a false Rules

Violation Report for failing to follow institutional procedures when participating in inmate count (FAC at ¶¶ 66, 67, 69); **2-** when Defendant Lieutenant Smith held a hearing on the RVR he failed to intervene during improper proceedings (FAC at ¶ 78); **3-** when defendant Smith precluded witnesses from testifying (FAC at ¶¶ 72, 73, 74, 87); and, **4-** when defendants Sherman and Smith failed to intervene and investigate the incident of the RVR (FAC at ¶ 56).

These allegations, even if true, do not raise a constitutional claim. There is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. <u>Canovas v. California Dept. of Corrections</u>, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); <u>see</u> <u>e.g.</u>, <u>Lee v. Whitten</u>, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986)). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not errorfree decision-making." <u>Jones v. Woodward</u>, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing <u>Ricker v. Leapley</u>, 25 F.3d 1406, 1410 (8th Cir. 1994); <u>McCrae v. Hankins</u>, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against false information being reported against him nor the alleged failure of defendants Smith and Sherman to intervene in the RVR process.

Plaintiff also alleges that the disciplinary proceeding against him resulted in the forfeiture of 30 days good time credits and may affect his review of suitability for parole by the Parole Board, causing him to serve a longer sentence (FAC at ¶ 71). When a prisoner challenges the legality or duration of his custody, or raises a constitutional challenge which could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus. <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973); <u>Young v. Kenny</u>, 907 F.2d 874 (9th Cir. 1990), cert. denied 11 S.Ct. 1090 (1991). Moreover, when seeking damages for an allegedly unconstitutional conviction or imprisonment, "a § 1983 plaintiff must prove that the conviction or sentence has been reversed

on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck v. Humphrey, 512 U.S. 477, 487-88 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 488. This "favorable termination" requirement has been administrative decisions which result in a forfeiture of good-time credits. Edwards v. Balisok, 520 U.S. 641, 643–647 (1997). The Complaint does not contain any allegations to show that Plaintiff's finding of guilt which resulted in his forfeiture of 30 days good time credits has been reversed, expunged, declared invalid, or called into question by a writ of habeas corpus. Thus, Plaintiff is barred by Heck and Edwards from pursuing any claims under § 1983 concerning the process he was provided which resulted in the forfeiture of good time credits.

Plaintiff further alleges that the guilty finding at his RVR hearing may affect whether he is found suitable for parole at a parole hearing. California Penal Code § 3041 vests all California prisoners "whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." Saldate v. Adams, 573 F. Supp. 2d 1303, 1305 (E.D. Cal. 2008) (citing Irons v. Carey, 505 F.3d 846, 850 (9th Cir. 2007); see Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003). However here, any argument that Plaintiff's rules violation offense will invariably affect his parole is meritless. Crapo v. Davis, No. 1:13-CV-01190-AWI-GS, 2013 WL 5754952, at *4 (E.D. Cal. Oct. 23, 2013). Any assertion that this administrative level offense will affect a future determination of Plaintiff's parole suitability, let alone be the sole reason for parole denial, is neither credible nor reasonable. Id. The mere fact of Plaintiff's administrative level violation, while it might possibly constitute one of the myriad of factors that the BPH would consider in a parole hearing, is simply too attenuated to invoke the protections of due process, Sandin, 515 U.S. at 487, and it can hardly be considered so pivotal to the question of granting parole that one could conclude that a sufficient nexus exists between it and the length of imprisonment such that a sufficient likelihood exists of it affecting the overall length of

Petitioner's confinement. Id. (citing Docken v. Chase, 393 F.3d 1024, 1030–31 (9th Cir. 2004). Therefore, the Court finds that the mere possibility that Plaintiff's guilty finding at his RVR hearing may affect whether he is found suitable for parole at a later time is too attenuated to invoke the protections of due process.

Thus, based on the foregoing, Plaintiff fails to establish the existence of a liberty interest for which the due process protection is sought and therefore fails to state a claim for violation of his rights to due process.

### B7.    Municipal Policy

Plaintiff alleges that defendants Sherman and Smith failed to uphold their duty when they failed to intervene in his RVR hearing or investigate the RVR improper proceedings, which Plaintiff considers violation of a municipal policy of deliberate indifference, and Plaintiff identifies Defendant Sherman's O.P. 403 policy as a municipal policy that caused Plaintiff to be injured.

Under Monell v. New York City Dept. of Social Services, 436 U.S. 658, (1978), "local government units which are not considered part of the State for Eleventh Amendment purposes" can be held liable for violations of Section 1983.  Machado v. California Dep't of Corr. & Rehabilitation, No. 12-CV-6501 JSC, 2013 WL 5800380, at *4 (N.D. Cal. Oct. 28, 2013).  Here, however, neither Defendant Sherman nor Smith can be said to be acting as a municipality. To the contrary, as discussed above in the section titled Eleventh Amendment Immunity, CDCR as a state agency is entitled to immunity under the Eleventh Amendment, as are Defendants Sherman and Smith as state officials for suits in their official capacity.  Id. (citing see Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)). Plaintiff may contend that Defendants Sherman and Smith are not immune from suits for damages or declaratory relief in their personal capacity, Id. and as such, Plaintiff would be correct that the Eleventh Amendment does not bar suits for damages against state officials in their individual capacity.  Id. (citing see Hafer v. Melo, 502 U.S. 21, 30–31 (1991) ("the Eleventh Amendment does not erect a barrier against suits to impose "individual and personal liability" on state officials under § 1983")).  However, this does not translate into a finding that Defendants Sherman and Smith are municipalities for

purposes of <u>Monell</u> liability under Section 1983.  <u>See</u> <u>Monell</u>, 436 U.S. at 690–91 (applies only with respect to suits brought against "municipalities and other local government units". . . stating that "[o]ur holding today is, of course, limited to local government units which are not considered part of the State for Eleventh Amendment purposes."))   Accordingly, Plaintiff's claims for municipal liability under Section 1983 must be dismissed without leave to amend.

### B8.   Armstrong Remedial Plan & Operational Policy (O.P.) 403

Plaintiff alleges that Defendant Stuart Sherman implemented and executed Operational Policy 403, which states that DPW inmates are the only inmates authorized to sit on their beds during count time, which is a direct violation of the Armstrong Remedial Plan.  Plaintiff alleges that the Armstrong Remedial Plan provides that "inmates who have a verified disability that prevents them from standing during count shall be reasonably accommodated to provide for effective performance of count."  (ECF No. 13 at 11 ¶ 39.)

Plaintiff repeatedly emphasizes Defendants' alleged violations of the Armstrong Remedial Plan, but such violations do not provide an independent basis for damages in this court. <u>Roberts v. California Dep't of Corr. & Rehab.</u>, No. 2:12-CV-0247 KJM AC, 2014 WL 2109925, at *8 (E.D. Cal. May 20, 2014).  Violations of the Armstrong Remedial Plan must be addressed through the procedures provided by that plan.  <u>Id.</u> (citing <u>see</u> <u>Frost v. Symington</u>, 197 F.3d 348, 358–59 (9th Cir.1999); <u>see also</u> <u>Crayton v. Terhune</u>, 2002 U.S. Dist. **LEXIS** 17568, *10–11, 2002 WL 31093590 (N.D.Cal.2002); <u>Jamison v. Capello</u>, 2013 U.S. Dist. **LEXIS** 16958, *14, 2013 WL 6182035 (E.D.Cal.2013); <u>Weathers v. Hagemeiister–May</u>, 2014 U.S. Dist. **LEXIS** 10524, 15, 2014 WL 309444 (E.D.Cal.2014)).  This court does not have jurisdiction to enforce the <u>Armstrong</u> decree.  Even if that decree was violated, that does not necessarily mean that Title II of the ADA was violated.  <u>Id.</u> (citing <u>see</u> <u>Cagle v. Sutherland</u>, 334 F.3d 980, 986–87 (9th Cir. 2003) (consent decrees often go beyond minimum legal requirements)).   Accordingly, compliance with the Armstrong decree and/or remedial plan is immaterial to plaintiff's claim in this case.  Plaintiff fails to state a claim for violation of the Armstrong Remedial Plan.

///

///

### B9.   Verbal Harassment

Plaintiff alleges that Defendant Pulido-Esparza and his co-workers verbally harassed Plaintiff for being a Jailhouse Lawyer and filing grievances.  Plaintiff is advised that mere verbal harassment or abuse alone is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983.  Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

### C.   STATE LAW CLAIMS

Plaintiff alleges that Defendants failed to comply with prison policy, including failure to train employees, and violated California regulations and the DOM (Department Operations Manual).  These are state law claims.  Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.  Plaintiff must also sufficiently plead the claim presentation requirement contained in California's Government Code § 900 et seq.

"California's Government Claims Act requires that a tort claim against a [state] public entity or its employees for money or damages be presented to the [Department of General Services][5] no more than six months after the cause of action accrues." Lopez v. Cate, No. 1:10-cv-01773-AWI, 2015 WL 1293450, at *13 (E.D. Cal. 2015) (citing Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2).   "Timely claim presentation is not merely a procedural requirement, but is . . . a condition precedent to plaintiff's maintaining an action against defendant and thus an element of the plaintiff's cause of action." Id. (internal quotation marks and citations

---

[5]   The Department of General Services was formerly the Victim Compensation and Government Claims Board.  McCoy, 2020 WL 5257842, at *2),

omitted).  The "obligation to comply with the Government Claims Act" is independent of the obligation to exhaust administrative remedies pursuant to the Prison Litigation Reform Act. McCoy v. Torres, No. 119CV01023NONEJLTPC (E.D. Cal. Sept. 3, 2020), 2020 WL 5257842, at *2, report and recommendation adopted, No. 119CV01023NONEJLTPC, 2021 WL 111748 (E.D. Cal. Jan. 12, 2021).

Plaintiff provides evidence that he complied with the California Tort Claims Statute by filing claim #20005047, bringing claims relevant to the claims in this case which accrued on December 28, 2019,[6] received by the Government Claims Program on June 4, 2020, and that the claim was denied on July 1, 2020, before the original Complaint was filed on August 20, 2020. (ECF No. 13 at 26-31.)   See Cardenas v. Cty. of Tehama, No. 218CV03021TLNDMC, 2020 WL 4475188, at *10 (E.D. Cal. Aug. 4, 2020).  Plaintiff attached the claim to the First Amended Complaint, indicating when he filed the claim and what specific facts and causes of action were referred to in the claim. See ECF No. 13 at 16:26-31.)

I fell to the ground [and] injured my right knee and wrist.  SATF is violating ARP § II, 1-6 – Eligibility for a standing count accommodation therefore is not limited to people classified DPW.  I have several muscle cramps due to elevated creatine kinase.  SATF has denied my accommodation as a DPO inmate stating I'm not DPW per O.P. 403.  Headquarters staff all failed to meaningfully consider my disability related request by denying my request for accommodations, which violates Armstrong Remedial Plan.  I'm being retaliated against for filing grievances and lawsuits against prison officials.

With this information, Plaintiff has sufficiently pleaded facts demonstrating he complied with the California Government Claims Act in bringing his state law claims, which the Court now screens for claims upon which relief may be granted. However, as follows, Plaintiff fails to

---

[6] Plaintiff alleges in the First Amended Complaint that the incident with Defendant Pulido-Esparza occurred from December 15, 2019 through December 28, 2019, and on December 28, 2019, Defendant Pulido-Esparza issued Plaintiff a Rules Violation report (RVR) #006948533 for the specific act: Failure to Present for Count as Described in Institutional Procedures.  (ECF No. 13 at 14 ¶¶ 65-66.)

state a cognizable claim for relief for any of his state claims, and therefore his state claims fail.

### C1.   Failure-to Train

Plaintiff alleges that Defendant Sherman failed to train his officers to accommodate DPO (intermittent wheelchair user) inmates such as Plaintiff to sit instead of standing during institutional count at 1700 hours. (FAC at ¶ 50.) This allegation, without more, is too vague and conclusory to state a cognizable claim. Plaintiff has not alleged any facts regarding the existence of a training program, or the adequacy, or inadequacy, of Defendant Sherman's training program regarding the accommodation of inmates who use wheelchairs or other assistive devices, and fails to allege facts showing a pattern of behavior by officers.

Therefore, Plaintiff fails to state a cognizable claim against Defendant Sherman for failure to train officers.

### C2.   Title 15 Regulations, DOM Provisions

Plaintiff alleges that Defendants violated California state regulations, 15 CCR § 3320(e), 15 CCR § 3320(h), and 15 CCR §3320(J). (FAC at ¶¶ 80, 81, 82.) Plaintiff also alleges that Defendants failed to comply with D.O.M. (Department Operations Manual) §52020.5.1, which states that disabled inmates shall be reasonably accommodated, dependent on their disability. (FAC at ¶ 95.)

The existence of DOM provisions governing the conduct of prison officials does not necessarily entitle an inmate to sue civilly for their violation. E.g., Vasquez v. Tate, No. 1:10-cv-1876 JLT (PC) (E.D.Cal. Dec. 28, 2012), 2012 WL 6738167, at *9; Davis, 901 F.Supp.2d at 1211.

Importantly, there is no private right of action under Title 15. See e.g., Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012) ("There is no implied private right of action under title fifteen of the California Code of Regulations"); Hill v. White, 2014 U.S. Dist. **LEXIS** 22960, 2014 WL 711016, at *5 (E.D. Cal. 2014) (Title 15 of the California Code of Regulations does not provide a private right of action).  See also Patterson v. California Dep't of Corr. & Rehab. (E.D.Cal. July 7, 2022, No. 1:22-cv-00138-JLT-BAM (PC)) 2022 U.S.Dist.**LEXIS** 119791, at *22-24 (citing see, e.g., Nible v. Fink, 828 Fed.Appx. 463 (9th Cir. 2020) (violations of Title 15

of the California Code of Regulations do not create private right of action); <u>Prock v. Warden</u>, No. 1:13-cv-01572-MJS (PC), 2013 U.S. Dist. **LEXIS** 145626, 2013 WL 5553349, at *11-12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); <u>Parra v. Hernandez</u>, No. 08cv0191-H (CAB), 2009 U.S. Dist. **LEXIS** 106092, 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); <u>Chappell v. Newbarth</u>, No. 1:06-cv-01378-OWW-WMW (PC), 2009 U.S. Dist. **LEXIS** 41499, 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations). Similarly, there is no liability under 1983 for violating prison policy. <u>Cousins v Lockyer</u>, 568 F.3d 1070 (9th Cir. 2009); <u>Chiprez v Warden</u>, 2021 US Dist **LEXIS** 156145).

  Accordingly, Plaintiff's state claims that Defendants violated Title 15 regulations and provisions of the D.O.M. should be dismissed for failing to state a colorable claim for relief, since no such private right exists.

### C3. <u>Negligence</u>

  Plaintiff has not alleged in the FAC that any of the Defendants were negligent. However, to the extent that such a claim may exist in the FAC, the Court shall address the requirements to state a negligence claim. To state a claim for negligence under California law, a plaintiff must plead sufficient facts to show "(1) duty; (2) breach; (3) causation; and (4) damages." <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1203 (9th Cir. 2003). A plaintiff 'must allege a causal connection between the negligence . . . and the injury he suffered. <u>Berkley v. Dowds</u>, 152 Cal. App. 4th 518, 528, 61 Cal. Rptr. 3d 304, 312 (2007). Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. <u>Johnson</u>, 217 F.3d 726 at 731. The Court finds that Plaintiff fails to state a negligence claim against any of the Defendants, as discussed below.

///

///

### 3a.      Defendant CDCR & Warden Sherman

With few exceptions not applicable here,[7] California Government Code § 844.6 makes public entities immune from liability for an injury to "any prisoner." Millare v. CDCR, No. 2:22CV1862KJMKJN P, 2023 US Dist **LEXIS** 58253, at *6 (E.D. Cal. Apr. 3, 2023; Jacks v Gonzalez, 2021 Cal. Super. **LEXIS** 40454). Therefore, pursuant to California Government Code § 844.6, defendant CDCR is immune from suit as to Plaintiff's negligence claim.

As for Warden Sherman, California Government Code 820.8 provides a public employee is not liable for an injury caused by the act or omission of another person (see, Jacks supra). Here, other than alleging that defendant Sherman failed to "meaningfully consider Plaintiff's disability-related request" (1AC, #24), Plaintiff has not alleged facts that Warden Sherman was involved in the incident that allegedly caused Plaintiff's injury, thus Plaintiff fails to allege a negligence claim against Warden Sherman.

### 3b.      Defendant Pulido-Esparza

Plaintiff alleges in the FAC that the incident with Defendant Pulido-Esparza occurred "on December 15, 2019 through December 28, 2019." (FAC at ¶ 65.) Plaintiff alleges that he informed Defendant Pulido-Esparza that he was having severe cramps and could not stand at that particular moment in time and that he has fallen numerous times already. (FAC at ¶ 63.) Plaintiff alleges that Defendant Pulido-Esparza just asked Plaintiff if he was DPW and walked off, then issued Plaintiff an RVR for not being able to stand due to a medical condition. (FAC at ¶¶ 63, 64.) These allegations are not sufficient to support a cognizable negligence claim against Defendant Pulido-Esparza because Plaintiff has not described any injury resulting from Defendant Pulido-Esparza's conduct.[8]   In addition, if Plaintiff's injury occurred on December

---

[7] Liability is limited to the failure to summon care for "serious and obvious medical conditions requiring immediate care" of which the defendant has "actual or constructive knowledge." Millare, 2023 WL 2760908, at *6 (E.D. Cal. Apr. 3, 2023) (quoting Watson v. State of California, 21 Cal.App. 4th 836, 841 (1993)

[8] In his Government Torts Claim, Plaintiff describes falling on December 29, 2019. (ECF No. 13, Exh. B. pg 26).  However, this date is not within the time period Plaintiff alleges the incident with Defendant Pulido-Esparza occurred (December 15, 2019 through December 28, 2019, see above).

29, 2019 (see, footnote 8 below), then it must be assumed that defendant Pulido-Esparza was not the individual who was present on the 29th, and again Cal Govt Code 820.8 would not attribute liability to him.

### 3c.    Defendant Smith

Likewise, Plaintiff cannot succeed with a negligence claim against Defendant Smith because Plaintiff has not shown that his claimed physical injury to his right knee and wrist was caused by conduct on defendant Smith's part as required in a negligence suit. Again, under California law the elements of a negligence cause of action are the following: **1-** a legal duty to use due care; **2-** breach of that duty; **3-** the breach was the proximate or legal cause of the resulting injury; and, **4-** actual loss or damage (see, Millare, supra).  Here, Plaintiff has not done so. In addition, Cal Gov code 820.8 comes into play absolving defendant Smith of negligence liability.

### C4.    Conclusion

The Court finds that Plaintiff fails to state any cognizable state law claims in the FAC.

### D.    RELIEF REQUESTED

In addition to monetary damages and costs of suit, Plaintiff also requests declaratory relief, injunctive relief, and attorney's fees as relief.

### D1    Declaratory Relief

With regard to declaratory relief, such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

### D2    Attorney's Fees

With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees. . . ." 42 U.S.C. § 1988(b). However, Plaintiff's contention that he is entitled to

attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a *pro se* attorney-plaintiff.").

### D3    Expungement of the RVR

Plaintiff seeks an order expunging the RVR because it caused him to lose credits. He also alleges that the RVR may affect the determination of his eligibility for parole by the Parole Board. Requests for prospective relief are limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." O'Brien v. Ogletree (E.D.Cal. Mar. 15, 2021, No. 1:20-cv-1553-BAM (PC)) 2021 U.S.Dist.**LEXIS** 48279, at *10- 11. A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court. Id.  Indeed, a court's duty to protect inmates' constitutional rights does not confer the power to manage prisons or the capacity to second-guess prison administrators, a task for which courts are ill-equipped. Id. (citing Toussaint v. McCarthy, 801 F.2d 1080, 1086 (9th Cir. 1986), abrogated on other grounds by Sandin, 515 U.S. 472).

Importantly, requests for prospective injunctive relief are limited by 18 USC 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the relief sought is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. (see, O'Brien, 2021 US Dist **LEXIS** 48279, at *10). Here, the Court cannot grant Plaintiff's request for relief to remove the RVR because the validity of the RVR is not the subject of the single

///

claim for which this court has determined Plaintiff states a claim, the ADA claim. Moreover, expunging the RVR would not correct Plaintiff's claimed ADA violation.

## V.   CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff states cognizable claims in the First Amended Complaint against Defendant CDCR for violation of the ADA, but fails to state any other cognizable claims in the First Amended Complaint, nor any claims against the individual Defendants Smith, Sherman & Pulido-Esparza. Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires." However, a district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013). In this action, the Court previously granted Plaintiff an opportunity to amend the complaint with guidance by the Court. Plaintiff has now filed two complaints without alleging facts against any of the individual Defendants, except CDCR, upon which relief may be granted. The Court finds that the deficiencies outlined above are not capable of being cured by amendmend and therefore further leave to amend should not be granted. 28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

## VI.   PLAINTIFF'S OBJECTIONS AND MOTION TO AMEND

On April 19, 2023, Plaintiff filed objections to the April 19, 2023 findings and recommendations and brought a motion to amend the First Amended Complaint to add facts in support of his retaliation claim.  (ECF No. 17.)  Plaintiff also submitted a proposed Second Amended Complaint for the Court's review.  Plaintiff argues that the deficiencies in the First Amended Complaint outlined by the Court in the findings and recommendation are capable of being cured by amendment, and therefore he should be granted leave to amend.

### A.    Leave To Amend – Rule 15(a)

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of course within (**A**) 21 days after serving it, or (**B**) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.  Fed. R. Civ. P. 15(a).  Otherwise, a party may amend its pleading only with the opposing party's written

consent or the court's leave, and the court should freely give leave when justice so requires.  Id.  Here, Plaintiff has already amended the complaint once.  Therefore, Plaintiff requires leave of court or Defendants' consent to file a Second Amended Complaint.  Here, no Defendants have appeared in the case and Plaintiff has not obtained consent by any of them.  Therefore, Plaintiff requires leave of court to amend the complaint.

"Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"  AmerisourceBergen Corp. v. Dialysis West, Inc., 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  Notwithstanding a strong policy permitting amendment, leave to amend "is not to be granted automatically."  Lucas v. Breg, Inc. (S.D.Cal. Jan. 11, 2016, No. 15-cv-258-BAS-NLS) 2016 U.S.Dist.**LEXIS** 3197, at *6. (quoting Jackson v. Bank of Haw., 902 F.2d 1385, 1387 (9th Cir. 1990)). Ultimately, "the grant or denial of an opportunity to amend is within the discretion of the District Court[.]"  Id. (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).  The Court considers five factors in deciding a motion for leave to amend: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint."  Id. (quoting Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004); see also Foman, 371 U.S. at 182; AmerisourceBergen Corp., 465 F.3d at 946).  A district court's discretion to deny leave to amend is particularly broad where the plaintiff has previously filed an amended complaint.  See Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003).  Id. (citing Mullen v. Surtshin (N.D.Cal. 2008) 590 F.Supp.2d 1233, 1236.)  Not all of these factors merit equal weight, however.  Id. As the Ninth Circuit has explained, prejudice to the opposing party is the "touchstone of the inquiry under Rule 15(a)" and "carries the greatest weight."  Id. (quoting Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003)).

### B.    Summary of Proposed Second Amended Complaint

The events at issue in the proposed Second Amended Complaint allegedly occurred at SATF.  Plaintiff names three of the same Defendants in the proposed Second Amended Complaint that he named in the First Amended Complaint, L. Pulido-Esparza (Correctional Officer); Stuart Sherman (Warden, SATF); and CDCR.

The gravamen of Plaintiff's proposed Second Amended Complaint is the same as in the First Amended Complaint, that Defendants forced Plaintiff to stand up during inmate counts until counted by the officer taking count while Plaintiff was having severe cramps and in excruciating pain, rather than allowing him to sit on his assigned bed or wheelchair during count. Plaintiff also alleges that Defendant Pulido-Esparza issued a Rules Violation Report against Plaintiff out of retaliation for Plaintiff participating in the prison grievance process.

**Discussion**

Plaintiff's ADA and retaliation claims in the proposed Second Amended Complaint are largely the same as those in the First Amended Complaint.  The Court again finds that Plaintiff states only an ADA claim against Defendant CDCR in the proposed Second Amended Complaint and no claims against any other Defendant. It would be futile to grant Plaintiff leave to file the proposed Second Amended Complaint to bring his retaliation claim because again Plaintiff fails to allege sufficient facts showing that Defendant Pulido-Esparza retaliated against him under the First Amendment.  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some **adverse action** against an inmate (2) **because of** (3) that prisoner's **protected conduct**, and that such action (4) **chilled** the inmate's exercise of his First Amendment rights, and (5) the action **did not reasonably advance** a legitimate correctional goal." Rhodes, 408 F.3d at 567-68.

Plaintiff again shows that Defendant Pulido-Esparza took an adverse action against him – filing a Rules Violation Report against Plaintiff.  (On December 28, 2019, Defendant Pulido-Esparza issued Plaintiff a Rules Violation Report (RVR) #006948533 for the specific act: failure to present for Count as Described in Institutional Procedures. (ECF No. 17 at 7 ¶61.))

Plaintiff again shows that he participated in protected conduct.  He alleges that on approximately December 24, 2019, Plaintiff was assisting an inmate with a prison grievance against Defendant Pulido-Esparza for not intervening to stop another inmate from physically attacking the inmate.  (ECF No. 17 at ¶ 67.) The inmate told Defendant Pulido that Plaintiff was helping him file a grievance against Pulido and that he would be filing a failure-to-protect claim against Pulido in federal court. Id.  Plaintiff's assistance to another inmate filing a grievance is

protected conduct.  <u>Watison</u>, 668 F.3d at 1114 (The filing of an inmate grievance is protected conduct.);  So is assisting other inmates in filing grievances.  <u>See</u> <u>Rizzo v. Dawson</u>, 778 F.2d 527, 531 (9th Cir. 1985).

Plaintiff also satisfied the requirement to allege that his rights to express his protected First Amendment rights were chilled by Defendant Pulido's conduct.  (ECF No. 17 at 8 :71.)

However, and importantly, Plaintiff fails to establish that Defendant Pulido issued the RVR against Plaintiff *because* Plaintiff was helping another inmate file a grievance.  He also fails to show that there was no legitimate penological purpose for Defendant Pulido to issue the RVR against Plaintiff.  Plaintiff makes only a conclusory statement that issuance of the RVR "did not reasonably advance the correctional goal of discouraging further non-compliance with rules and regulations."  (Proposed Second Amended Complaint, ECF No. 17 at 8 ¶ 71.)  This is not sufficient to state a claim.  Nor does Plaintiff allege facts in the proposed Second Amended Complaint demonstrating that Defendant Pulido's issuance of the RVR did not advance the legitimate penological purpose of discouraging non-compliance with rules and regulations.  Therefore, Plaintiff fails to state a claim for retaliation in the proposed Second Amended Complaint, and the Court finds it would be futile to grant Plaintiff leave to file the proposed Second Amended Complaint.  Accordingly, Plaintiff's motion for leave to amend should be denied.

## VII.   RECOMMENDATIONS AND CONCLUSION

Based on the foregoing, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's motion to amend the First Amended Complaint be denied;

2. This case proceed with the First Amended Complaint only against defendant CDCR for violation of the ADA, and that all other claims and defendants be dismissed for failure to state a claim, with prejudice, and without leave to amend;

3. Plaintiff's claims for retaliation, the prison appeals process, equal protection, violation of due process, municipal policy, Operations Procedure 403; Armstrong Remedial Plan, the D.O.M, verbal harassment, and state law claims be dismissed with prejudice;

4.      Defendants Lieutenant C. Smith (Hearing Officer), Correctional Officer L. Pulido-Esparza, and Stuart Sherman (Warden) be dismissed from this case for Plaintiff's failure to state a claim against them; and

5.      This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **On or before May 26, 2023**, Plaintiff may file written objections to the findings and recommendations with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    __May 9, 2023__           _____ **/s/ Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE